O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY JEAN PALOMINO,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,<br><br>    Defendant. | Case No. ED CV 14-212-SP<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## **INTRODUCTION**

On February 10, 2014, plaintiff Kimberly Jean Palomino filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of disability insurance benefits ("DIB") and supplemental security income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for

adjudication without oral argument.

Plaintiff presents two issues for decision: (1) whether there was an apparent conflict between the testimony of the vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT"), such that the Administrative Law Judge ("ALJ") erred at step five in relying on the VE's testimony; and (2) whether the jobs the ALJ determined plaintiff capable of performing require a level of education that plaintiff does not have.  Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 7-10; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-8.

Having carefully studied, inter alia, the parties' written submissions, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ erred at step five.  Although there was no need for the ALJ to develop the vocational issues in this case with respect to plaintiff's level of education, the ALJ erred in failing to resolve the apparent conflict between plaintiff's manual limitations and the jobs the VE found plaintiff capable of performing, as defined in the DOT.  The court therefore reverses the Commissioner's decision denying benefits and remands for further proceedings consistent with this opinion.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was forty-two years old on her alleged disability onset date, has a ninth or tenth grade education.  AR at 42, 161, 173.  She has past relevant work experience in retail.  *Id.* at 44, 49, 173-74.

On October 7, 2010, plaintiff applied for DIB and SSI, alleging that she has been disabled since June 9, 2010, due to type 2 diabetes, neuropathy, heart palpitations, anxiety, depression, panic attacks, nerve damage, carpal tunnel in the

right arm, hyperlipidemia, severe acid reflux, insomnia, and high cholesterol. *Id.* at 149-50, 161-68, 172.  Plaintiff's applications were denied initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 85-89, 93-104.

On July 16, 2010, plaintiff, represented by counsel, appeared and testified before the ALJ. *Id.* at 37-55.  The ALJ also heard testimony from a medical expert and VE David A. Rinehart. *Id.* at 55-81.

On August 7, 2012, the ALJ denied plaintiff's claim for benefits. *Id.* at 17-31.  Plaintiff filed a timely request for review of the decision, which the Appeals Council denied. *Id.* at 1-6, 12-13.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has not engaged in substantial gainful activity since June 9, 2010, the alleged onset date. *Id.* at 19.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: morbid obesity, poorly controlled diabetes mellitus with neuropathy, carpal tunnel syndrome with right carpal tunnel release, heart palpitations, hyperlipidemia, acid reflux, insomnia, and high cholesterol. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 21.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that she had the capacity to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b), consisting of: occasionally lifting and/or carrying twenty pounds; frequently lifting and/or carrying ten pounds; standing and/or walking two hours out of an eight-hour workday, fifteen to thirty minutes at a time, with the use of a cane for distances of greater than one block; sitting for an unlimited amount of time, with normal breaks every two hours and the ability to elevate her feet six inches and stand and stretch as needed; occasionally stooping and bending, but no squatting, kneeling, crawling, running, jumping, or operating foot pedals and controls; climbing stairs twice per day, but restricted from climbing ladders, working at heights, or balancing; and performing frequent fine manipulation and frequent gross manipulation, but restricted from performing forceful gripping, grasping, or twisting. *Id.* Plaintiff was restricted from operating heavy equipment and motorized vehicles, working around unprotected machinery, or being required to care for the safety of others. *Id.*

The ALJ found, at step four, that plaintiff was unable to perform her past relevant work. *Id.* at 29.

At step five the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including information clerk, addresser, and telephone quotation clerk. *Id.* at 29-30.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 30.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3, 12-13. The decision of the ALJ stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Commissioner must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

Plaintiff contends that the ALJ erred because he improperly relied on the testimony of the VE, who identified jobs that exceeded plaintiff's abilities. P. Mem. at 5-16. Specifically, plaintiff alleges that the ALJ erred by failing to identify and explain inconsistency between the VE's testimony and the DOT and the Occupational Outlook Handbook. *Id.*

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1512(f), 416.912(f).

ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. § 416.966(d)(1) (DOT is source of reliable job information). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi*, 486 F.3d at 1152-53 (citing Social

Security Ruling ("SSR") 00-4p).[2]  But failure to so inquire can be deemed harmless error where there is no apparent conflict or the VE provides sufficient support to justify deviation from the DOT.  *Id.* at 1154 n.19.

In order for an ALJ to accept a VE's testimony that contradicts the DOT, the record must contain "'persuasive evidence to support the deviation.'"  *Id.* at 1153 (quoting *Johnson*, 60 F.3d at 1435).  Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).

Here, the ALJ, as required, asked the VE whether his testimony was consistent with the DOT, to which the VE replied that it was.  AR at 79.  Although the ALJ fulfilled his initial obligation to inquire whether the VE's testimony conflicted with the DOT, that was not the end of the ALJ's obligations.  Where a VE wrongly testifies that there is no conflict, if "evidence from a VE 'appears to conflict with the DOT,' SSR 00-4p requires further inquiry: an ALJ must obtain 'a reasonable explanation for the apparent conflict.'"  *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (quoting SSR 00-4p).  Where the ALJ fails to obtain an explanation for and resolve an apparent conflict – even where the VE did not identify the conflict – the ALJ errs.  *See Hernandez v. Astrue*, 2011 WL 223595, at *2-5 (C.D. Cal. Jan. 21, 2011) (where VE incorrectly testified there was no

---

[2]  "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies.  SSRs are binding on all components of the SSA.  SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."  *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

conflict between her testimony and DOT, ALJ erred in relying on VE's testimony and failing to acknowledge or reconcile the conflict); *Mkhitaryan v. Astrue*, 2010 WL 1752162, at *3 (C.D. Cal. Apr. 27, 2010) ("Because the ALJ incorrectly adopted the VE's conclusion that there was no apparent conflict, . . . the ALJ provided no explanation for the deviation" and "therefore committed legal error warranting remand.").

A.   **The ALJ Erred at Step Five in Failing to Reconcile an Apparent Conflict Between the VE's Testimony and the DOT**

In determining plaintiff's RFC, the ALJ found, among other things, that plaintiff could perform "frequent fine manipulation and frequent gross manipulation," but that plaintiff could not perform "forceful gripping, grasping, or twisting." AR at 21. Plaintiff contends that the ALJ's findings only take account of the frequency of the manipulation, and not the "qualitative components of that manipulation." P. Mem. at 7-8. Specifically, plaintiff contends that the jobs identified by the VE, as defined in the DOT, each require "average finger dexterity," which the ALJ did not specifically determine plaintiff possessed. *Id.* The court agrees.

The VE here testified that someone with plaintiff's RFC could perform the jobs of information clerk (DOT 237.367-018), addresser (DOT 209.587-010), and telephone quotation clerk (DOT 237-367-049). AR at 57, 72-73. The DOT for each of these jobs discusses not only handling and fingering, but also dexterity. *See* P's Exs. 1-3. The job of information clerk requires finger dexterity of "Level 3 - Middle 1/3 of the Population." P's Ex. 1. The jobs of addresser and telephone clerk require finger dexterity of "Level 4 - Lowest 1/3 Excluding Bottom 10%." P's Exs. 2, 3. Although, as defendant notes, the ALJ made findings with regard to plaintiff's manipulative capacity to handle and finger (*see* D. Mem. at 3-5; AR at

21), the ALJ made no finding as to whether plaintiff's condition fits within the DOT's dexterity parameters. And the DOT addresses dexterity separately from handling and fingering. *See* P's Exs. 1-3; *see also* 20 C.F.R. § 404.1567(b) (a finding of an ability to do light work implies an ability to do sedentary work except where "there are additional limiting factors such as loss of dexterity").

Of course, one might logically assume that since the ALJ included no dexterity limitations in plaintiff's RFC, and in fact found plaintiff could perform frequent fine manipulation, no specific inquiry of the VE with respect to plaintiffs's undetermined dexterity limitation was required. But the court finds further inquiry and findings by the ALJ were required here, for two reasons.

First, the court is mindful of the Ninth Circuit's unpublished decision in *Machado v. Astrue*, 391 Fed. Appx. 606 (9th Cir. 2010). In that case, as explained by the District Court, all of the jobs the VE testified the claimant could perform, as defined by the DOT, excluded individuals whose dexterity is in the bottom 10 percent of the population. *Machado v. Astrue*, 2009 WL 790000, at *6 (E.D. Cal. Mar. 23, 2009). There, like here, the ALJ addressed handling and fingering in the RFC and the hypotheticals posed to the VE, but failed to inquire as to whether plaintiff's limitations conflicted with the DOT's dexterity requirements. *Id*. On appeal, the Ninth Circuit held that, in light of evidence of claimant's manual limitations, the ALJ erred by failing to make any findings as to whether claimant's dexterity limitations put him into the DOT's excluded category – the bottom 10 percent of the population. *Machado*, 391 Fed. Appx. at 608. This is precisely what plaintiff argues the ALJ erred in failing to do here.

Second, this is not a case in which dexterity was not in issue. As in *Machado*, the ALJ here was faced with a record replete with evidence of plaintiff's manual limitations, and jobs with dexterity exclusions. Plaintiff

9

testified that she stopped working because she is not able to use her hands, that she drops everything heavier than a small water bottle, and that she experiences pain, tingling, and numbness in her hands. AR at 22, 44-46. The ALJ found plaintiff partially credible. *Id.* at 22. The ALJ also found that plaintiff has, among other things, a history of peripheral neuropathy second to diabetes and carpel tunnel syndrome in both hands.[3] *Id.* at 24-27; *see also id.* at 371, 382-83, 386, 397-402, 409, 417-18, 420, 473, 482-84, 486, 492-93, 499, 505, 512-14, 523-33, 543, 572. But like in *Machado*, the ALJ here did not specifically address whether plaintiff's manual limitations precluded her ability to engage in the jobs identified by the VE. This apparent inconsistency should have been addressed and resolved by the ALJ with the help of the VE. *See Machado*, 391 Fed. Appx. at 608.

Accordingly, remand is merited to resolve this inconsistency. The ALJ should specifically determine whether plaintiff's limitations put her in the DOT's excluded category for dexterity.

**B.     The ALJ Did Not Err at Step Five With Respect to Plaintiff's Education**

Plaintiff next complains that the jobs specified by the VE, which the ALJ found plaintiff capable of performing, are inconsistent with her level of education. *See* P. Mem. at 7-9; Reply at 6. Specifically, plaintiff contends that all three jobs identified, as those jobs are defined by the Occupational Outlook Handbook ("OOH"), require a high school diploma, which is inconsistent with plaintiff's ninth grade education. P. Mem. at 8-9; Reply at 6.

---

[3] "Peripheral neuropathy is a dysfunction of a spinal nerve or nerves distal to a plexus or root. It includes numerous syndromes characterized by varying degrees of sensory disturbances, pain, muscle weakness and atrophy, diminished deep tendon reflexes, and vasomotor symptoms, alone or in any combination." Mark H. Beers, M.D., et al., eds., *The Merck Manual of Diagnosis and Therapy* 1903 (Merck Research Labs., 18th ed. 2006)

10

As discussed above, the VE stated that his testimony was consistent with the DOT, and the ALJ relied on the VE's testimony. AR at 30, 79. Thus, typically the question would be whether the VE incorrectly testified there was no conflict, in the face of evidence of an apparent conflict. *See Overman*, 546 F.3d at 463 (quoting SSR 00-4p). But plaintiff does not contend that the VE's testimony conflicts with the DOT; instead, she alleges that it conflicts with the OOH. P. Mem. at 9; Reply at 6.

As an initial matter, plaintiff has cited no authority for the proposition that the ALJ is bound by the OOH. *See* P. Mem. at 8-9; Reply at 5-6. Although the Commissioner's regulations provide that the OOH is one of several competent sources of job information, they do not provide that the OOH is the controlling source. *See* 20 C.F.R. §§ 404.1566(d), 416.966(d). Indeed, it is the DOT that courts have recognized as the rebuttable presumptive authority on job classifications. *See Johnson*, 60 F.3d at 1435. And here, plaintiff does not argue that her education level, or her reasoning/mental abilities, in any way conflict with the DOT for the jobs identified by the VE. *See* P. Mem. at 8-9; Reply at 5-6.

Additionally, even assuming the OOH is binding on the ALJ, plaintiff has failed to demonstrate that the VE's testimony is in fact inconsistent with the OOH. The OOH simply states that the "typical entry-level education" for the three jobs identified is a high-school diploma. *See* P's Ex. 7 at 39 (O*Net description of "word processors and typists," which is listed as related to DOT job of addresser).[4]

---

[4] Plaintiff attaches as Exhibit 7 over fifty pages of the OOH. While the court located O*Net listing 43-9022 (addresser) within the exhibit, it is unable to find O*Net listing 43-4171 (information clerk and telephone quotation clerk). It appears that this information was not included. *See* P's Exs. 4-7. Nevertheless, a search of the OOH database reveals that O*Net listing 43-4171 uses the same language with regard to education.

11

Plaintiff argues that "typical" is synonymous with "bona fide occupational qualifications." P. Reply at 6 (citing 29 C.F.R. § 1625.6(a)). But the C.F.R. provision plaintiff cites is inapposite,[5] and the court finds this argument to be unpersuasive. The O*Net, the numbering system used by the OOH, does not specify that a high school diploma is required for the jobs at issue here, but instead states that the "Education/Training Required" is "short-term on-the-job training." Michael Farr, *O*NET Dictionary of Occupational Titles* 43-0000 (3d ed. 2004). The O*Net goes on to discusses job requirements in terms of "skill" and "ability," listing abilities such as speaking, reading comprehension, writing, inductive reasoning, and active listening. *See id.* The RFC does not include any limitation that would preclude these abilities (*see* AR at 21), and plaintiff has not argued that she lacks any of the skills or abilities listed. As such, plaintiff has failed to demonstrate that the VE's testimony conflicted with the OOH.

In sum, the ALJ relied on the VE, who testified that his testimony was consistent with the DOT, which creates a rebuttal presumption of job classification. *Tommasetti*, 533 F.3d at 1042. Plaintiff does not argue that her mental abilities are inconsistent with the DOT. Indeed, it appears that any such argument would fail, as the regulations themselves recognize that a person with limited education could do unskilled work, such as the jobs identified here. *See* AR at 30; 20 C.F.R. §§ 404.1564(b)(3) (a person with a limited education – 7th grade through 11th grade – has abilities in reasoning, arithmetic, and language, but

---

[5] "Whether occupational qualifications will be deemed to be "bona fide" to a specific job and "reasonably necessary to the normal operation of the particular business," will be determined on the basis of all the pertinent facts surrounding each particular situation. It is anticipated that this concept of a bona fide occupational qualification will have limited scope and application. Further, as this is an exception to the Act it must be narrowly construed." 29 C.F.R. § 1625.6(a).

not enough to do complex duties involved in semi-skilled or skilled jobs); *cf.* 20 C.F.R. § 404.1564(b)(4) (someone with a high school education is generally considered able to engage in semi-skilled through skilled work). In light of this and plaintiff's failure to demonstrate that the OOH is binding and requires a high school diploma, there was no apparent discrepancy between the VE's testimony and plaintiff's education for the ALJ to resolve.

## V.
## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are

satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, as set out above, remand is required because the ALJ erred at step five in failing to address plaintiff's finger dexterity. The record has not been fully developed on this point, and absent the ALJ's further findings and inquiry regarding dexterity, it is unclear whether the ALJ must find plaintiff disabled. Accordingly, on remand the ALJ shall assess plaintiff's dexterity and determine whether such dexterity is consistent with the DOT requirements for each job plaintiff is found capable of performing.

## VI.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: May 20, 2015

SHERI PYM
United States Magistrate Judge